# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* N.D.

No. 19-0924 (Wirt County 18-JA-15)

FILED

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father D.D., by counsel Jessica E. Myers, appeals the Circuit Court of Wirt County's September 10, 2019, order terminating his parental rights to N.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Courtney L. Ahlborn, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent, denying his motion for a post-dispositional improvement period, and terminating his parental rights upon a finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed a child abuse and neglect petition against petitioner and the mother based upon allegations of drug abuse and domestic violence. Specifically, the DHHR alleged that the mother abused methamphetamine and marijuana during her pregnancy with N.D. and that petitioner stated, "they had done a 'risk benefit analysis' and determined 'pot was ok' to use during pregnancy." Additionally, the DHHR alleged that, immediately after N.D.'s birth, petitioner was escorted from the hospital based upon the mother's claims that she was afraid of him due to his past violent behaviors. Lastly, upon visiting petitioner's home, the DHHR found the environment to be in a deplorable, filthy condition.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

In November of 2018, the circuit court held an adjudicatory hearing. Petitioner did not appear, and his counsel requested that the circuit court continue the hearing. The circuit court denied the request. The DHHR presented the testimony of the mother, who stated that she and petitioner abused marijuana during her pregnancy and that petitioner had told her it was "okay" to do so. The mother also testified that, after N.D.'s birth, petitioner was screaming at her and would not let her use the restroom. The mother stated that she requested that hospital staff remove him from her room because she was afraid that he would become physically violent. The mother stated that her fear was based on petitioner's prior abuse of her, detailing times that he had "slammed" her onto the bed when she was pregnant and punched her in the face. After hearing testimony, the circuit court adjudicated petitioner as an abusing parent based upon evidence that he and the mother abused marijuana during her pregnancy and that he perpetrated domestic violence against the mother. Thereafter, the DHHR put services in place for petitioner, including supervised visitations, drug screens, and parenting classes.

The circuit court held a dispositional hearing in January of 2019. Petitioner failed to attend but was represented by counsel. The circuit court accepted a report authored by a Child Protective Services ("CPS") worker, which indicated that petitioner failed to participate in services. Specifically, petitioner failed to comply with drug screens, visit with the child, and remain in contact with service providers. Petitioner also provided a mailing address in the State of Florida when he resided in West Virginia. Despite these failures, the circuit court granted petitioner a post-adjudicatory improvement period.

Petitioner failed to appear at a review hearing held in April of 2019, but was represented by counsel. The DHHR advised the circuit court that petitioner was noncompliant with the terms and conditions of his improvement period and failed to maintain contact with the DHHR or any service providers. The circuit court agreed that petitioner failed to comply with his improvement period and scheduled the dispositional hearing.

In anticipation of the dispositional hearing, the DHHR filed a summary with the circuit court indicating that petitioner "has had no contact with the [DHHR] and has not participated in any services." The circuit court held a dispositional hearing in May of 2019. Petitioner appeared and was represented by counsel. He moved the circuit court to continue the dispositional hearing. Despite finding that petitioner failed to meet with the DHHR to establish services, the circuit court granted petitioner's motion to continue and ordered that he provide his address to the DHHR and contact service providers to arrange for drug screening, which would "demonstrate his willingness to participate in the improvement period process prior to his dispositional hearing."

In August of 2019, the circuit court held a final dispositional hearing. The DHHR submitted reports from a CPS worker and a Court Appointed Special Advocate. Petitioner requested a post-dispositional improvement period and testified that he would comply with services and drug screens. Petitioner explained that he attempted to contact the DHHR approximately thirty times in the preceding month but was unable to reach his caseworker. According to petitioner, his caseworker had changed, but he did not know how to contact the new worker. Petitioner admitted that he missed a multidisciplinary team ("MDT") meeting in July, as he had been in Florida for most of that month, but testified that he maintained employment and suitable housing and had

enough money saved to care for the child. Despite petitioner's claims that he would comply with services, petitioner testified "I don't even think I need parenting classes other than complying with CPS, because I raised [the mother's] two [older] children without any issues for several months." Petitioner also denied having a drug problem, claiming he only smoked marijuana when he was "younger."

At the close of evidence, the circuit court denied petitioner's request for a post-dispositional improvement period. The circuit court found that it was "easy for [petitioner] to sit here now and say he wishes to do this and that, but there's no history of him following up on anything." Further, the circuit court noted that petitioner was "granted an improvement period on January 8th of 2019 and has done absolutely nothing." According to the circuit court, "[t]he bottom line is that . . . since January 8th of 2019, he's had no parenting classes, no adult life skills classes, no psych evaluation, no drug screens, no contact with service providers, [and] no visitation with his child." As such, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that it was not in the child's best interests to be returned to petitioner's care. It is from the September 10, 2019, dispositional order terminating petitioner's parental rights that he appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in adjudicating him as an abusing parent. According to petitioner, the evidence presented was insufficient to prove that he had a history of drug abuse. Petitioner claims that the only evidence presented regarding his drug abuse was the testimony of the mother and that there was no other testimony to corroborate her claims. Petitioner contends that there was also insufficient information to establish that he had a history of domestic violence. He asserts that the mother's testimony that he "put his hands on her"

---

[2]The mother's parental rights were also terminated below. According to the DHHR, the permanency plan for the child is adoption by out-of-state relatives following procedures set forth in the Interstate Compact on the Placement of Children.

was vague and lacked corroboration. Petitioner claims the evidence presented was "scant at best" and concludes that the circuit court erred in adjudicating him. We disagree.

We have previously noted as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)). Pursuant to West Virginia Code § 49-1-201, an "abused child" is one whose health or welfare is being harmed or threatened by "[a] parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, *or knowingly allows another person to inflict*, physical injury or mental or emotional injury, upon the child or another child in the home." (Emphasis added).

Here, sufficient evidence existed to adjudicate petitioner as an abusing parent. The mother testified that petitioner "slammed" her against the bed while she was pregnant with the child. Additionally, while in the hospital, petitioner became aggressive towards the mother and began yelling at her. The mother also testified that petitioner encouraged her to abuse drugs during the pregnancy and abused drugs with her. To the extent petitioner argues this evidence is insufficient to establish that he abused or neglected the child, we have previously held that a father's knowledge of a mother's drug abuse during her pregnancy and his failure to protect the child from said drug abuse is sufficient to make a finding of abuse and neglect. *See In re A.L.C.M.*, 239 W. Va. 382, 391-92, 801 S.E.2d 260, 269-70 (2017) (finding that "with respect to Father's alleged failure to stop Mother's illegal drug use during her pregnancy, the statutes governing abuse and neglect proceedings allow a finding of abuse to be based upon a parent's knowledge that another person is harming his/her child."). Here, the mother testified that petitioner abused drugs with her during the pregnancy and encouraged her to abuse drugs. Clearly, this testimony is sufficient to make a finding of abuse based upon the definition of "abused child" set forth in West Virginia Code § 49-1-201. While petitioner contends that the mother's testimony was not corroborated, this Court has held that West Virginia Code § 49-4-601(i) requires the DHHR to prove its case by clear and convincing evidence but "does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syl. Pt. 1, in part, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Moreover, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997)

4

(citations omitted). Here, the circuit court was able to weigh the mother's testimony and assess its weight accordingly. The circuit court found the mother's testimony credible and further found that her testimony was sufficient to establish that petitioner abused and/or neglected the child. Based on the foregoing, we find no error in the circuit court's adjudication of petitioner as an abusing parent.

Petitioner next argues that the circuit court erred in denying him a post-dispositional improvement period. He points to his testimony that he would comply with services and further contends that he had always been willing to participate in services but was "unable to have any meaningful communication with the necessary parties in order to participate in the services." Upon our review, we find that petitioner is entitled to no relief in this regard.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). Lastly, West Virginia Code § 49-4-610(3)(D) provides that a circuit court may grant a parent a post-dispositional improvement period when

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period.

Having reviewed the record, we find that the circuit court did not err in denying petitioner's request for a post-dispositional improvement period. Because petitioner was already granted a post-adjudicatory improvement period during the proceedings, he was required to demonstrate (1) a substantial change in circumstances and (2) that he was likely to fully participate in an improvement period. On appeal, petitioner fails to establish what substantial change of circumstances he experienced. Moreover, the overwhelming evidence set forth below demonstrates that petitioner was not likely to fully participate in an improvement period given his complete failure to participate in every service offered to him. As noted by the circuit court, at the time of the dispositional hearing petitioner had not participated in parenting and adult life skills classes, random drug screens, a psychological evaluation, or supervised visitation. Further, petitioner failed to maintain contact with the DHHR and left West Virginia for a month during the proceedings. While petitioner claims that he was unable to contact his caseworker, we note that petitioner chose to absent himself from several hearings and MDT meetings where he could have spoken to his caseworker. Additionally, petitioner conceded that he did not ask his attorney who his new caseworker was or explain that he was having difficulty reaching the caseworker. Finally, petitioner testified that he did not have a drug abuse problem and did not need parenting classes. We have previously held that failure to acknowledge the issues of abuse and neglect render an

5

improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Based on petitioner's failure to comply with every service offered to him and his failure to accept responsibility for his actions, we find no error in the circuit court's denial of his motion for a post-dispositional improvement period.

Petitioner's final assignment of error alleges that the circuit court erred in terminating his parental rights based upon its findings that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future. Petitioner argues that the circuit court erred in relying solely upon his failure to participate in services provided by the DHHR and should have considered the conditions that led to the filing of the petition, which indicate that "there is certainly a chance that . . . petitioner could correct any deficiencies." Additionally, petitioner claims that his failure to participate in services offered by the DHHR was due to the fact that he was unable to contact anyone at the DHHR and no one notified him that his caseworker had changed. Petitioner argues that he is willing to participate in services and correct the conditions of abuse and that it was erroneous for the circuit court to terminate his parental rights. We find no merit in petitioner's argument.

West Virginia Code § 49-4-604(b)(6) (2019)[3] provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) (2019) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The evidence demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. As shown above, petitioner failed to participate in court-ordered drug screens, parenting and adult life skills classes, and supervised visitation. While petitioner blames communication problems with the DHHR for his failure to participate in services, he voluntarily absented himself from the proceedings, missing several hearings and MDT meetings. Indeed, petitioner did not attend any hearings between his preliminary hearing in September of 2018 and a dispositional hearing held in May of 2019. Moreover, petitioner testified that he did not need parenting classes and did not have a drug problem. Accordingly, the evidence demonstrates that petitioner failed to respond to or follow through with rehabilitative services designed to reduce or prevent the abuse and neglect of the child. Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was necessary for the child's

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

welfare. While petitioner claims he should have been granted a post-dispositional improvement period prior to the termination of his parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Petitioner failed to comply with the circuit court's orders below and failed to acknowledge the extent of his actions as of the dispositional hearing. Accordingly, the circuit court's findings are fully supported by the record below, and we find no error in the termination of petitioner's parental rights.

Lastly, because the DHHR is still pursuing an adoptive placement for the child, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6) (2019)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 10, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison